Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued May 13, 2003          Decided July 25, 2003

No. 02-1107

NORTHERN NATURAL GAS COMPANY,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

NORTHERN MUNICIPAL DISTRIBUTORS GROUP, ET AL.,
INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Frank X. Kelly* argued the cause for petitioner. With him on the briefs were *Steve Stojic*, *J. Gregory Porter*, *Dorothy R. Dornan*, and *Maria K. Pavlou*.

*Judith A. Albert*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

the brief were *Cynthia A. Marlette*, General Counsel, and *Dennis Lane*, Solicitor.

Before: GINSBURG, *Chief Judge*, and ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: Northern Natural Gas Company petitions for review of two orders in which the Federal Energy Regulatory Commission rejected a proposed revision of Northern's tariff. The revision would have allowed the pipeline company to enter into agreements for transportation of natural gas at a rate somewhere between the maximum and minimum levels prescribed in the tariff, as determined by an index or formula. The Commission rejected the proposal as "too ill-defined, such that its implementation could lead to unreasonable results." *Northern Natural Gas Co.*, 98 F.E.R.C. ¶ 61,106 at 61,323 (2002) (*"Rehearing Order"*). Because the Commission failed to provide a reasoned explanation for its ruling, we grant the petition and vacate the orders under review.

## I. Background

In order to provide pipeline operators flexibility in meeting the pricing demands of their customers, the Commission has, since the advent of open-access transmission, permitted them to offer a discount from the rates specified in their tariffs. *See Associated Gas Distrib. v. FERC*, 824 F.2d 981, 1007 (D.C. Cir. 1987) ("Tariffs are to provide for ceilings and floors, with the pipeline free to charge anywhere within that band"); *see* 18 C.F.R. § 284.10(c)(5) (2003) ("the pipeline may charge an individual customer any rate that is neither greater than the maximum rate nor less than the minimum rate on file for that service"). The Commission aims to avoid price discrimination by requiring the pipeline to provide to all similarly situated shippers any discount it offers to one customer. *Natural Gas Pipeline Co. of Am.*, 82 F.E.R.C. ¶ 61,298 at 62,174 (1998). To that end, the Commission requires the pipeline to post on an Internet web site the

details of all discounted rate agreements, including the name of the shipper, the rate charged under the contract, the maximum rate, and the quantity, duration, and receipt and delivery points involved.   18 C.F.R. § 284.13 (2003).

Northern's tariff, under the heading "Types of Discounts," currently provides:

> From time to time Shipper and Northern may agree in writing on a level of discount of the otherwise applicable rates and charges in addition to a basic discount from the stated maximum rates.   For example, Northern may provide a specific discounted rate:
>
> (1) to certain specified quantities under the Service Agreement;
>
> (2) if specified quantity levels are actually achieved or with respect to quantities below a specified level;
>
> (3) to production reserves committed by the Shipper;
>
> (4) during specified time periods;
>
> (5) to points of receipt, points of delivery, supply areas, transportation paths or defined geographical areas;  or
>
> (6) in a specified relationship to the quantities actually transported (i.e., that the rates shall be adjusted in a specified relationship to quantities actually transported).
>
> In all circumstances the discounted rate shall be between the maximum rate and the minimum rate applicable to the service provided.

In its proposed filing, Northern sought to add a seventh type of discount "based on published index prices for specific receipt or delivery points or other agreed-upon pricing reference points for price determination."   The proposal provided that "[s]uch discounted rate may be based on the published index price point differentials or arrived at by formula." Like the types of discount previously authorized under the tariff, the new type of discount was to be constrained by the maximum and minimum rates in the tariff.   Northern explained to the Commission that it sought the ability to use

"index-based rates" in order to offer customers a tool for reducing risk in long-term contracts.

In the orders under review, the Commission, rejecting Northern's proposal, distinguished the proposed type of discount from those already available in the tariff on the ground that it "established rates through the use of a fluctuating index or formula rather than through a specific, fixed number." *Rehearing Order* at ¶ 61,322. The Commission went on to announce "certain minimum criteria" for evaluating whether "a formula rate can form the basis of a discount rate." *Id.* at ¶ 61,323.

> [A] tariff proposal for an acceptable formula rate must: (1) define the rate component to be discounted; (2) make clear that the discounted, fixed rate resulting from the formula cannot exceed the maximum rate, nor be less than the minimum rate; (3) not change the underlying rate design; and (4) not include any minimum bill or minimum take provision that has the effect of guaranteeing revenue.

*Id.* Northern's proposal did not satisfy these criteria, the Commission held, because it was "vague," "ill-defined," and did not "provide for a rate that is fixed"; therefore, it "could lead to unreasonable results." *Id.* Accordingly, the Commission rejected the proposal and Northern petitioned for review.

## II. Analysis

Northern argues its proposal provides a lawful form of discounting because the resulting rate will always be within the maximum and minimum rates in the tariff, and under the Commission's rules a pipeline is "free to charge anywhere within that band." *Associated Gas Distrib.,* 824 F.2d at 1007. In Northern's view, a discounted rate is by definition any rate that falls within the tariff range, which the Commission has already determined to be just and reasonable. Northern claims the Commission failed to provide a reasoned explanation for rejecting its position, and with it the proposed tariff revision.

The Commission defends its decision on the ground that the proposal provides no assurance the rate will "remain[ ] fixed during the entire contract term," will be offered to all similarly situated shippers, will not change the underlying rate design, and will not include any minimum bill and minimum take requirements. We find none of these reasons sufficient to support the Commission's decision.

The Commission's primary concern with Northern's proposal is that, insofar as it would allow Northern and a customer to agree to a rate calculated upon the basis of a price index, that rate may fluctuate during the term of their contract. The Commission acknowledges it had approved formula-based discounts on two prior occasions, but distinguishes the proposals it approved on the ground that one used a formula to adjust rate components (within the tariff maximum and minimum) in order to maintain a fixed rate, *see Panhandle Eastern Pipe Line Co.*, 90 F.E.R.C. ¶ 61,031 at 61,153 (2000) ("discount agreements may provide for adjustments to rate components upward or downward to achieve an agreed upon overall rate"), and the other merely referenced an alternative fuel price index in order to determine a rate that would "remain constant throughout the duration of the contract," *Northern Natural Gas Co.*, 90 F.E.R.C. ¶ 61,064 at 61,242 (2000) (*"Initial Order"*) (distinguishing *Williston Basin Interstate Pipeline Co.*, 85 F.E.R.C. ¶ 61,247). Under Northern's proposal, by contrast, "the discount would be determined by an index that could change several times over the term of the contract." *Initial Order* at ¶ 61,242.

Northern does not deny that its proposal would allow fluctuating discounts. Rather, it argues that the Commission has failed to explain why a fluctuating discount is problematic, as long as the resulting rate will stay within the tariff range. We agree. The orders under review treat the possibility that a rate might change as an indication that the proposal is too "vague" and "ill-defined." *Rehearing Order* at ¶ 61,323. There is nothing inherently "vague" about rate fluctuation, however, provided the fluctuation is governed by an objective criterion, such as a published index or formula, as Northern's proposal requires. Moreover, the Commis-

sion's rules require Northern to post the details of all discounted rate agreements, so that similarly situated shippers will be able to evaluate the discounts — even as they fluctuate — and avail themselves of the discounted rates if they so choose.

In its brief the Commission expresses concern that in order to stay within the tariff range the parties to the agreement may be forced to adopt "a change in indexing midstream"; this post hoc concern is utterly without foundation. Northern's proposal sets the maximum and minimum rates in the existing tariff as the ceiling and floor for the discounted rate; those limitations will constrain the rate when the index or formula in the contract would otherwise produce a rate outside the range.

The Commission argues that "[e]ven with the check of rates within the [tariff] band, the [proposal] provides no clue to what reference points or formula might be selected, does not indicate the conditions that will determine which reference points apply to which shippers, and requires consultation between the parties." Requiring such information, however, is inconsistent with the Commission's well-established practice, as reflected in Northern's approved tariff, of allowing a carrier and a shipper freely to agree upon "a specific discounted rate" within the band of reasonable rates set out in the tariff. The parties work out the details of the discount agreement, after which the carrier must offer the same terms to all similarly situated shippers. Under Northern's current tariff, for example, it may agree to give a shipper a discount based upon specified "points of receipt, points of delivery, supply areas, transportation paths or defined geographical areas" or "in a specified relationship to the quantities actually transported." These general provisions give "no clue" to the specifics of the discount upon which the parties may agree, nor could they and still achieve pricing flexibility. The Commission has failed to explain why a discounting provision based upon an index requires a greater level of detail than the other discounting provisions it has previously approved in Northern's and other carriers' tariffs.

Finally, the Commission argues that Northern's proposal contains no assurance the discount agreements it authorizes will "not change the underlying rate design; and ... not include any minimum bill and minimum take provision that has the effect of guaranteeing revenue." The Commission's concern appears to be that the proposal allows so much room for negotiation that nothing — including a change in rate design or a minimum bill or minimum take provision — can be ruled out as the possible result of a contract under the proposal. Resp. Br. at 16 ("it is not possible to tell whether or not rates under Northern's proposal will satisfy these criteria, especially considering that the proposal contains nothing to limit the language that could be included in the unspecified formula"). Again, this concern is unfounded.

With regard to rate design, the Commission ignores the requirement under the proposal that the resulting rate be within the tariff range; obviously, an agreement could not eliminate one component of a two-part rate (*e.g.*, the reservation fee) and still charge the minimum rate for that component. *See Panhandle*, 90 F.E.R.C. at ¶ 61,155 (no change in rate design because each component remains within tariff range).

Although the proposal contains no explicit prohibition of minimum bill and minimum take agreements, neither do the other discount provisions in the tariff. Such agreements are independently made unlawful, however, by the Commission's rules. 18 C.F.R. §§ 284.7(e), 284.10(c)(1). The Commission has not explained why it deems that prohibition insufficient to prevent Northern and its shippers from entering into, posting, and offering other shippers the prohibited terms.

We conclude the Commission failed to provide a reasoned explanation for rejecting Northern's proposal, and in particular for finding the rate collar in the present tariff insufficient to ensure the resulting discounts would yield reasonable and lawful rates. We note that the Commission relied heavily upon several cases in which it had concluded, also without a reasoned explanation, that an index-based rate provision "can only be executed as part of a pipeline's negotiated rate authority." *Kern River Gas Transmission Co.*, 87 F.E.R.C.

¶ 61,284 at 62,140 (1999). *See also Natural Gas Pipeline Co. of Am.*, 86 F.E.R.C. ¶ 61,144 at 61,507 (1999); *Tennessee Gas Pipeline Co.*, 84 F.E.R.C. ¶ 61,096 at 61,497 (1998). From our review of the relevant decisions, it appears the Commission has never explicated the distinction between discounted and negotiated rates. The distinction Northern offers to fill the void — that discounted rates must fall within the tariff range whereas negotiated rates need not — is at least suggested in one of the Commission's policy statements. *See Alternatives to Traditional Cost-of-Service Ratemaking for Natural Gas Pipelines*, 74 F.E.R.C. ¶ 61,076 at 61,241 (1996) ("Because pipeline tariffs state that the pipeline will charge a rate between the maximums and minimums stated on the rate sheets, pipelines [that negotiate rates] will need to file conforming tariff sheets indicating that the rate for the service will be either the rates stated on its existing rate schedule or a rate mutually agreed upon by the pipeline and the customer"). Furthermore, when the Commission granted Northern approval to negotiate rates, it required that Northern offer, as an alternative or "recourse" rate in all cases, the rates in the existing tariff — which the Commission said are by definition reasonable. *See Northern Natural Gas Co.*, 77 F.E.R.C. ¶ 61,035 at 61,135 (1996). These prior statements strongly support, although they do not compel agreement with, Northern's conclusion that a "discounted" rate is any rate that deviates from the rate sheets but falls within the tariff range. Meanwhile, the Commission has provided no coherent alternative definition. Perhaps now it will either do so or adopt the definition suggested by Northern.

### III.  Conclusion

For the foregoing reasons, the petition for review is

*Granted.*